JOHN W. LOVELL, RESPONDENT, v. UNDERWRITING MAN-
AGEMENT CORPORATION, NATIONAL GUARANTY FIRE
INSURANCE COMPANY, AND INDEPENDENT BONDING
AND CASUALTY INSURANCE COMPANY, APPELLANTS.

Argued May 27, 1930—Decided February 2, 1931.

358

For the respondent, *Frederic M. P. Pearse.*

For the appellants, *Stein, McGlynn & Hannoch.*

The opinion of the court was delivered by

HETFIELD, J. This is an appeal from a judgment obtained against the appellants in the Essex County Circuit Court. The suit was instituted to recover commissions for the sale of stock of the National Guaranty Fire Insurance Company and the Independent Bonding and Casualty Insurance Company. The complaint alleges that the defendants, by their agent, authorized the plaintiff to sell the stock of the said two insurance companies, and agreed to pay the plaintiff seventy-five cents for each share of stock he sold or caused to be sold. It appears that the respondent was employed by Robert R. Tuttle, president of the Underwriting Management Corporation, which was organized to promote the two insurance companies. The Underwriting Management Corporation had the sole contract to sell the stock of the two insurance companies, and it was to be the exclusive agent in the writing of their policies. Mr. Tuttle requested the respondent to make a trip to Rome, New York, where there resided several persons who held preferred stock in the Underwriting Management Corporation, having a par value of $100 per share, and endeavor to have them purchase stock in the insurance companies, instructing him to represent that their stock would be retired within six months at $200 per share, and the new stock need not be paid for until that time. It appears that the respondent obtained several subscriptions for the new stock, based upon these representations, but the Management Corporation was unable to retire its preferred stock as promised, it being subsequently retired at $100 per share instead. In July, 1928, the insurance companies desired to cancel the contract they had, for underwriting, with the Management Corporation, which was agreed to, under certain conditions, some of which were, that the insurance companies were to pay, in cash, such amount as the Management Corporation might need in addition to its cash on

hand so it could pay all liabilities and retire its preferred stock at par value, with accrued dividends to July, 1928. The Management Corporation was to be dissolved, and any assets remaining were to be conveyed and transferred to the insurance companies. All of the conditions were apparently fulfilled, and the Management Corporation was dissolved. The respondent claims that some two thousand nine hundred shares of stock of the two insurance companies were purchased and paid for by persons who had held the preferred stock of the Management Corporation, and were induced to subscribe for the new stock through the respondent's solicitations, and that he had received from the Management Corporation, at different times, payments on account of commissions due, it being understood that he was only to be paid commissions as the payments for the stock were received by the companies, and that there was a balance due him of $968.80, which amount the jury awarded. The appellants contend that the respondent was to receive no commissions unless the original arrangement of retiring the Management Corporation stock at $200 per share was carried out, and that the sale of stock of the insurance companies, upon which the respondent claims commissions, was made by the insurance companies direct with the purchasers as individuals, and not as stockholders of the Management Corporation.

One of the reasons urged for reversal is that the court erroneously admitted in evidence a written statement which the respondent had obtained from the secretary of the Management Corporation, indicating the names of persons who had held preferred stock in the Management Corporation, having been canvassed by the respondent, subsequently purchasing and paying for stock in the insurance companies, and also setting forth the number of shares purchased by each person. The respondent obtained the statement for the purpose of ascertaining what stockholders of the Management Corporation whom he had interviewed, purchased new stock. We think that the admission was proper, so far as the Management Corporation was concerned, and that the authority of the secretary to represent the Management Corporation

in making said statement could not be questioned. The sole business of the Management Corporation was promoting and selling stock of the insurance companies, and it had contracted with the respondent to sell said stock on its behalf. The statement did not admit any liability, but simply set forth the number of shares of stock of the two insurance companies sold to the various persons whom the respondent had interviewed. The information in question was obtained from the records of the Management Corporation, and there was no effort on the part of the appellants to contradict or dispute any part thereof. The question presented, therefore, is whether a principal is bound by acts or statements of his agents, with respect to matters within the scope of their employment and committed to their agency. In the early case of *Runk* v. *Ten Eyck*, 24 *N. J. L.* 756, the rule was laid down as follows: "Declarations and doings of a third person, acting in the capacity of an agent, are exempt from the general rule respecting hearsay testimony. They are admitted in evidence against the principal, as the representations or acts of the principal himself, whom the agent represents, while engaged in the particular transaction to which the declarations or acts refer. They must constitute a part of the *res gestæ* in the course of his employment about the matter in question; they must accompany the doing of the business or making of the contract, and must be within the scope of the delegated authority."

It is also contended that the court committed error by admitting in evidence a resolution passed at a special meeting of the stockholders of the Management Corporation, held on June 19th, 1928, which provided that the proposition made by the two insurance companies, to the effect that if the Management Corporation would cancel the underwriting contracts, and convey and transfer to the insurance companies all of its assets, after the payment of its liabilities, the insurance companies would provide sufficient money to pay all the liabilities of the Management Corporation, of which the respondent's claim was one. We think the document was legal evidence of the obligation of the insurance com-

panies to pay these commissions, in view of the fact that the transaction provided for by the resolution was carried out.

It is further urged that the court erred in charging the jury that if the respondent was entitled to recover his claim against the Management Corporation, he was also entitled to recover from the insurance·companies, which took over all the assets of the Management Corporation. We think the resolution admitted in evidence justified this charge.

The judgment under review should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, VAN BUSKIRK, HETFIELD, DEAR, WELLS, JJ. 12.

*For reversal*—None.